IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SMALL VENTURES USA, L.P.,               §
                                        §
                Plaintiff,              §
                                        §
v.                                      §     CIVIL ACTION NO. H-11-3072
                                        §
RIZVI TRAVERSE MANAGEMENT, LLC,         §
MLRT FILM HOLDINGS, LLC,                §
SUHAIL RIZVI, JOHN                      §
GIAMPETRONI, DIANE STIDHAM,             §
DANNY MANDEL, and BEN KOHN,             §
                                        §
                Defendants.             §

<u>MEMORANDUM AND ORDER</u>

Pending is Defendants Rizvi Traverse Management, LLC's, MLRT Film Holdings, LLC's, Suhail Rizvi's, John Giampetroni's, Diane Stidham's, and Danny Mandel's Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 41). After carefully reviewing the motion, response, replies, and the applicable law, the Court concludes as follows.

I.   <u>Background</u>

Plaintiff Small Ventures USA, LP ("Small Ventures"), a venture capital and private equity investment firm based in Houston, Texas,[1] brings this action to recover damages for alleged tortious conduct surrounding the solicitation, sale, and management of Small Venture's $10 million investment in RT Newbridge, III, LLC

---

[1] Document No. 40 ¶ 5 (1st Am. Complt.).

("Newbridge"), a company that provides gap financing to producers of independent films.[2]  Small Ventures asserts fraud, fraud by nondisclosure, negligent and grossly negligent misrepresentation, negligence and gross negligence, Texas Securities Act ("TSA"),[3] and breach of fiduciary duty claims against Defendants Rizvi Traverse Management, LLC ("Rizvi Traverse"), MLRT Film Holdings, LLC ("MLRT"), Suhail Rizvi ("Rizvi"), John Giampetroni ("Giampetroni"), Diane Stidham ("Stidham"), and Danny Mandel ("Mandel") (together, "Defendants").[4]

After William O. Perkins, III ("Perkins"), Founder and Manager of Small Ventures, had inquired about investing in the film industry in the spring of 2008, Rizvi contacted Perkins on his Houston-based cell phone number on September 6, 2008 to ask him to

---

[2] *See* Document No. 42, ex. A ¶¶ 3-4 (Perkins Decl.).  RT Newbridge, III, LLC ("Newbridge") is "in the business of making production loans to independent producers . . . to fund a portion of the production costs to complete a picture."  Document No. 40 ¶ 16.

[3] TEX. REV. CIV. STAT. ANN. § 581-33 (West 2010).

[4] Diane Stidham ("Stidham") and Danny Mandel ("Mandel") are Managing Directors of Newbridge and are allegedly employed by Rizvi Traverse and MLRT.  Id. ¶¶ 10-11.  Newbridge is managed by MLRT which, in turn, is 100% held and controlled by Rizvi Traverse. Id. ¶ 7.  Suhail Rizvi is the co-founder and Chief Investment Officer of Rizvi Traverse, and John Giampetroni is co-founder and Chief Operating Officer of Rizvi Traverse and Managing Director of MLRT. *See id.* ¶¶ 8-9; *see also* Document No. 41, exs. C ¶ 1 (Giampetroni Decl.), D ¶ 1 (Rizvi Decl.).  Ben Kohn was dismissed from this case without prejudice.  *See* Document No. 24.  Small Ventures also dismissed its claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (c), (d).  *See* Document No. 42 at vii.

consider making an indirect investment in films through Newbridge.[5]
Rizvi allegedly made several misrepresentations to Perkins "for the
purposes of inducing Perkins and [Small Ventures] to agree to
invest in Newbridge," including representations that "the loans
Newbridge made for film production were not risky because they were
over-collateralized with foreign pre-sales or tax credits," and
that "the only risk was that the film would be delivered late and
that risk was insured by completion guaranty bonds."[6] Rizvi
allegedly failed to disclose that <u>Tekken</u>, a film accounting for
more than one-third of Newbridge's portfolio, received negative
reviews and was regarded as "really bad" by its own producer.[7]

Over the course of the following weeks, Perkins and Kayla
Bruzzese ("Bruzzese"), Small Ventures's Chief Financial Officer,
talked to Rizvi Traverse representatives Giampetroni, Rizvi, and
Todd Knowles and Newbridge managers Stidham and Mandel about the
Newbridge portfolio. Perkins met with Stidham and Mandel in
Newbridge's office in California while on a business trip in
September 2008,[8] and Bruzzese met with Rizvi Traverse employees at
Rizvi Traverse's office in New York on October 23, 2008.[9] At those

---

[5] Document No. 40 ¶ 17.

[6] <u>Id.</u>

[7] <u>Id.</u>

[8] Document No. 41, ex. E ¶ 7 (Stidham Decl.).

[9] Document No. 42, ex. B ¶ 5 (Bruzzese Decl.).

meetings, the Small Ventures representatives each were given spreadsheets representing that the loans in the Newbridge portfolio were in good financial health.[10] The spreadsheet and an Investment Presentation were also emailed to Bruzzese's and Perkins's Small Ventures Texas-based company email accounts.[11]

Throughout October, 2008, there were repeated and regular emails directed to Small Ventures's representatives in Houston and phone calls between the parties.[12] Based on the meetings, conversations, investment materials, and correspondence with Rivzi, Stidham, Mandel, and Giampetroni, Small Ventures ultimately decided to invest $10 million in exchange for a membership interest in Newbridge, in two payments: (1) $7 million on October 31, 2008 and (2) $3 million on December 31, 2008.[13] After Small Ventures made its initial capital investment on October 31, 2008, and continuing until 2011, Stidham and Mandel initiated regular weekly or biweekly conference calls with Small Ventures representatives Perkins and Bruzzese to discuss Newbridge's investments.[14] These were allegedly organized by Rizvi Traverse employee Karen Blanchard, who sent

---

[10] Id.; Document No. 41, ex. E ¶ 9.

[11] *See* Document No. 42, exs. B ¶¶ 3, 6; B-2; B-3; A ¶¶ 7, 10; A-2; A-3.

[12] Id., ex. B ¶ 2.

[13] Document No. 40 ¶ 41.

[14] Id., ex. B ¶ 15.

calendar invitations and call-in instructions to Bruzzese and Perkins at their Houston-based Small Ventures email accounts.[15]

Small Ventures alleges that Defendants, by delivering through email to Plaintiff in Texas, accounting spreadsheets and an investment presentation, and through multiple phone conversations to Small Ventures in Texas, reporting the health of the investment, falsely represented to Small Ventures that the majority of Newbridge's investments, including an independent film entitled Tekken, "were sound and financially healthy."[16]  The Tekken film alone--with an $11 million loan from Newbridge--accounted for more than one-third of Newbridge's total investment portfolio.[17]  Small Ventures claims that Defendants repeatedly misrepresented the true value of Newbridge's investments, knowing that the representations were false, or made the representations recklessly as positive assertions, without knowledge of their truth.  Small Ventures alleges that Defendants concealed or failed to disclose material facts, including that Tekken was not commercially viable although Defendants knew that Tekken's producer had defaulted on the loan on July 31, 2008, more than a month before Rizvi asked Small Ventures to invest and fully three months before Small Ventures paid the

---

[15] Id.

[16] Id. ¶ 35.

[17] Id. ¶¶ 2, 17.

first installment of its $10 million investment in Newbridge.[18] Small Ventures further contends that before it made its investment Defendants knew that Tekken was beset with serious problems, that it had received poor reviews at the Cannes Film Festival, and that it was woefully behind on its production schedule, but Defendants concealed and failed to disclose these material facts to Small Ventures. Instead, Defendants furnished to Plaintiff a spreadsheet in which "Tekken was listed as financially sound and healthy with a note 'in sales mode-no reason for concern at present time.'"[19] In all of their conversations about the Newbridge portfolio-- whether by phone, email, or letter--Defendants never disclosed to Small Ventures the problems with the Tekken loan.

For example, during their phone conferences, Defendants Stidham, Mandel, Rizvi, and Giampetroni allegedly discussed the status of the various investments in the Newbridge portfolio and the prospects of specific films.[20] But when asked about Tekken during the October 29, 2008 conference call, Stidham stated only that they "expected more in Cannes," and did not disclose that Tekken was not meeting its schedule or that there was any cause for

---

[18] Id. ¶ 27-35.

[19] Document No. 42, ex. 5 ¶ 5.

[20] Id., ex. B ¶¶ 12, 15.

6

concern, nor did any of the other Defendants on the phone reveal the problems with <u>Tekken</u>.[21]

Small Ventures additionally claims that Defendants were negligent in managing the <u>Tekken</u> loan because they failed to comply with the terms required for collection of the completion guaranty bond and thereby lost the opportunity to recoup the investment, and incurred liability for the bond company's costs and attorney's fees for defending the arbitration.[22]   Ultimately, Small Ventures alleges, "Newbridge failed and [Small Ventures] lost its investment" because "Defendants failed to collect on the <u>Tekken</u> loan."[23]

Small Ventures further contends that, *after* it had entered into the Subscription Agreement:

> Had [Small Ventures] known the truth about Newbridge, <u>Tekken</u> and the <u>Tekken</u> Loan, it would have sold its interest and mitigated its damages as soon as possible. Defendants continued to make their misrepresentations and omissions, the material portion of which are set out above, and induced [Small Ventures] to retain its ownership interest, and [Small Ventures] relied upon Defendants' continued Value Misrepresentations and Material Omissions, to its detriment.   Defendants' tortious conduct in Texas as described above, was the cause of [Small Ventures's] loss and inability to mitigate its damages.[24]

---

[21] <u>Id.</u>, ex. B ¶ 9.

[22] Document No. 40 ¶ 61-65.

[23] <u>Id.</u> ¶ 34.

[24] <u>Id.</u> ¶ 26.

Defendants move for dismissal pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(2), and, in part, 12(b)(6), contending that the First Amended Complaint "fails to state a claim for any intentional tort and this Court therefore lacks personal jurisdiction over Defendants."[25]

## II.   Motion to Dismiss Pursuant to Rule 12(b)(2)

### A.   Rule 12(b)(2) Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if:  (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.  *See* Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements.  Id.

This due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of

---

[25] Document No. 41 at 1.  In its Order dated March 22, 2012, Document No. 38, the Court granted Small Ventures's request to replead its fraud claims with the particularity required by Rule 9(b), which Small Ventures has done.

fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945). Two types of personal jurisdiction are recognized: (1) specific and (2) general. Specific jurisdiction exists when the cause of action relates to or arises out of the defendant's contacts with the forum. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984). Alternatively, general jurisdiction may be exercised over a defendant who has systematic and continuous contacts with the forum. See id. at 1872-73. "For the purposes of personal jurisdiction, the actions of one defendant cannot be attributed to another; instead, plaintiff must satisfy its prima facie showing with regard to each defendant." ADO Finance, AG v. McDonnell Douglas Corp., 931 F. Supp. 711, 714 (C.D. Cal. 1996) (citing Rush v. Savchuk, 100 S. Ct. 571, 579 (1980)).

When an evidentiary hearing on the question of personal jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a prima facie case of personal jurisdiction. See Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 211 (5th Cir. 1999). Proof by a preponderance of the evidence is not required. Kelly v. Syria Shell Petro. Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000). A plaintiff may present a prima facie case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction.

See WNS, Inc. v. Farrow, 884 F.2d 200, 203-04 (5th Cir. 1989).
Uncontroverted allegations in the plaintiff's complaint must be
taken as true, and conflicts between the facts contained in the
parties' affidavits and other documentation must be construed in
the plaintiff's favor.   See Alpine View, 205 F.3d at 215.

B.   Discussion

1.   Minimum Contacts and Due Process

Small Ventures contends that Defendants are subject to
specific personal jurisdiction because each Defendant either
directed misrepresentations, or failed to correct representations
previously made when they knew they were false, to Small Ventures
in Texas.[26]  Defendants submit affidavits in which they claim that
they do not have any offices in Texas, do not do business in Texas,
and did not "step foot in Texas" in connection with the Small
Ventures investment deal.[27]   However, "[i]t is well settled that
specific jurisdiction may arise without the nonresident defendant's
ever stepping foot upon the forum state's soil or may arise
incident to the commission of a single act directed at the forum."

---

[26] Document Nos. 40 ¶¶ 13-14; 42 at 6-10.  Small Ventures does
not contend that any of the Defendants is subject to general
jurisdiction in Texas.

[27] See Document No. 41, exs. C ¶¶ 2, 4 (Giampetroni Decl.); D
¶¶ 2, 8-9 (Rizvi Decl.); E ¶ 2 (Stidham Decl.); F ¶ 6 (Mandel
Decl.).

Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990) (citing Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2184 (1985) ("we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction . . .")); see also Wien Air, 195 F.3d at 213 ("'[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." (quoting Diamond Mortgage Corp. v. Sugar, 913 F.2d 1233, 1247 (7th Cir. 1990))). Moreover, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." Lewis v. Fresne, 252 F.3d 352, 358-59 (5th Cir. 2001) (citing Brown v. Flowers Indus., 688 F.2d 328, 332-33 (5th Cir. 1982)). For example, in Brown, the Fifth Circuit held that a single phone call initiated by the out-of-state defendant, and which was alleged to constitute a tort, was sufficient to confer personal jurisdiction. 688 F.2d at 331-33; see also Wien Air, 195 F.3d at 213 ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

Here, Small Ventures alleges that each Defendant initiated contacts with it in Texas through email, phone calls, and/or letters. It is uncontroverted that employees of Rizvi Traverse,

11

including Giampetroni, Stidham, and Mandel, emailed Bruzzese and Perkins at their Houston-based email accounts, attaching investment information and representations upon which Small Ventures was expected to rely in deciding whether to invest in Newbridge. Further, Stidham admits that Small Ventures "participated in semi-regular conference calls with certain Defendants to receive an update on its investment."[28]   Small Ventures alleges that its representatives Bruzzese and Perkins participated in numerous, regular conference calls attended by each Defendant, in which Defendants discussed the investment portfolio and the <u>Tekken</u> loan specifically while concealing material facts such as the film was not meeting deadlines and that its producer was in default on the loan.   Defendants allegedly initiated and invited Small Ventures and its representatives to participate in these telephonic conferences in which Stidham, Mandel, Rizvi, and Giampetroni, knowing that Small Ventures is a Texas company and that its representatives would likely be in Texas when participating in the calls, made the false representations and concealed material facts.[29]   Moreover, Plaintiff alleges that each Defendant delivered by email to Small Ventures in Houston the schedules for the phone

---

[28] Document No. 41, ex. E ¶ 11.

[29] Indeed, Bruzzese testified that both she and Perkins were in Houston during the key October 29, 2008 call, and that they were in Houston on other calls as well.  *See* Document No. 42, exs. A ¶ 9 and B ¶¶ 9, 12-13.

conferences.[30] Plaintiff further alleges that Defendants called Small Ventures's executives on phone numbers beginning with the Houston "713" area code, and knew that Bruzzese and Perkins both resided in Houston and worked for Small Ventures in Houston.[31] As Small Ventures points out, Defendants repeatedly dialed the phone numbers of Plaintiff's representatives and directed emails to the email accounts of the Houston company. Defendants in these communications made their false representations and concealed from Plaintiff material facts. *See e.g.*, <u>Phoenix Mining & Mineral LLC v. Treasury Oil Corp.</u>, No. 5:06-cv-58, 2007 WL 951866, at *5 (S.D. Tex. Mar. 28, 2007) (Alvarez, J.) (finding that emails sent to plaintiff's representatives in Texas containing allegedly fraudulent statements were sufficient to establish personal jurisdiction).

Defendants argue that they should not be haled into court for failing to disclose material information about the investment portfolio, but "the fact that the [defendant] continually communicated with the forum while steadfastly failing to disclose material information shows the purposeful direction of material

---

[30] Small Ventures produces evidence that Rizvi knew that Small Ventures's offices are located in Texas and that Perkins resides in Texas. *See* Document No. 42, ex. A ¶ 2 (Perkins Decl.). Defendants do not deny knowledge that Small Ventures's office is located in Texas or that Perkins and Bruzzese are both resident citizens of Texas.

[31] Document No. 42 at 13.

omissions to the forum state." <u>Wien Air</u>, 195 F.3d at 213; *see also* <u>Lewis</u>, 252 F.3d at 359 (defendant's failure to correct another's allegedly false statements in phone call with plaintiff conferred personal jurisdiction where plaintiff claimed that defendants intentionally defrauded him based upon the contents of that phone call).

2.   <u>Fair Play and Substantial Justice</u>

Given Defendants' alleged tortious actions directed toward the state of Texas, which are sufficient to establish jurisdiction over them, the remaining question is whether requiring Defendants to litigate in Texas would offend traditional notions of fair play and substantial justice.  In considering the fairness issue, the Court examines: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." <u>Guidry v. U.S. Tobacco Co., Inc.</u>, 188 F.3d 619, 630 (5th Cir. 1999) (citations omitted).  "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." <u>Wien Air</u>, 195 F.3d at 215 (quoting <u>Burger King</u>, 105 S. Ct. at 2185).  Defendants have not

done so.[32]  A Defendant's burden in answering this suit in Texas is no greater than Plaintiff's countervailing burden would be in prosecuting the case in a foreign state.  Moreover, Texas has a strong interest in protecting its citizens from fraud and violations of its securities laws.  *See, e.g.*, <u>GRM v. Equine Inv. & Mgmt. Grp.</u>, 596 F. Supp. 307, 318-19 (S.D. Tex. 1984) (finding that Texas's extensive state regulation manifested its strong interest in protecting victims of securities fraud); <u>Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.</u>, 517 F.3d 235, 245 (5th Cir. 2008) ("We have held that in a case like this, where a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities giving rise to personal jurisdiction, the exercise of that jurisdiction will be considered fair." (citing <u>Wien Air</u>, 195 F.3d at 215)).  Defendants have not demonstrated that this Court's exercise of jurisdiction raises any fairness issues of Constitutional proportions.

### III.  <u>Motion to Dismiss Pursuant to Rule 12(b)(6)</u>

#### A.  <u>Legal Standard</u>

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P.

---

[32] Defendants allege in their Motion to Dismiss that a mandatory arbitration clause governs this dispute and provides that it must be arbitrated in Oakland County, Michigan.  Document No. 41-1 at 24.  That question presently is not before the Court.

12(b)(6).   When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.   *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974).   The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims.   Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint.   *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997).   To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).   While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

B.   Discussion

1.   Fraud Claims

To state a claim for fraud under Delaware law, a plaintiff must plead facts to show: "(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." DCV Holdings, Inc. v. ConAgra, Inc., 889 A.2d 954, 958 (Del. 2005); Abry Partners V, L.P. v. F & W Acquisition LLC, 891 A.2d 1032, 1050 (Del. Ch. 2006).[33]

Defendants argue that Small Ventures fails to state a claim for fraud because (1) there are "no reliance" and "no other representations" clauses in the Subscription Agreement; (2) the relevant agreements disclosed the specific risks on which Small Ventures's fraud claims depend; and (3) any representations that

---

[33] Delaware law governs Small Ventures's fraudulent inducement claim because the Subscription Agreement contains a Delaware choice-of-law clause. See Lockheed Martin Corp. v. Gordon, 16 S.W.3d 127, 133 (Tex. App.--Houston [1 Dist.] 2000, pet. denied) ("Provided the law of the chosen state bears some reasonable relationship to the parties and the transaction, Texas will apply the law specified in the contract." (citing DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 678-79 (Tex. 1990)).

are forward-looking statements, puffery, or statements of opinion cannot support a claim for fraud.

Defendants cite <u>Abry Partners</u> for the proposition that a "no reliance" clause in a contract negates the element of reliance in Small Ventures's fraud claims.  891 A.2d at 1056.  The Delaware Chancery Court in <u>Abry Partners</u> qualified its general rule that a "no reliance" clause negates a subsequent fraud claim:

> At the same time, a concern for commercial efficiency does not lead ineluctably to the conclusion that there ought to be no public policy limitations on the contractual exculpation of misrepresented facts. Even commentators who recognize that there are aspects of bargaining in which it is often expected that parties will lie--such as when agents refuse to disclose or misrepresent their principals' reservation price--there is little support for the notion that it is efficient to exculpate parties when they lie about the material facts on which a contract is premised.

891 A.2d at 1062 (internal citations and footnotes omitted).  In fact, <u>Abry Partners</u> held that the "no reliance" clause in that case was unenforceable as against public policy to the extent that it restricted the plaintiff's claims based on intentional misrepresentations made by the seller *in the agreement itself*.  <u>Id.</u> at 1064.

Like the plaintiff in <u>Abry Partners</u>, Small Ventures alleges that the subscription agreement and other offering documents *themselves* contained the fraudulent information, and that the Defendants *knew* it contained fraudulent information at the time it

was signed and made the misrepresentations intentionally.  A number of specific instances are pled.  Moreover, Small Ventures alleges that the misrepresentations and omissions of material facts continued well after it signed the Subscription Agreement, and that it relied to its detriment on Defendants' assurances that all was well with the investment, which prevented Small Ventures from mitigating its damages.  Given the specific allegations pled in Plaintiff's First Amended Complaint, which are not copied here at length, at this stage in the proceedings the Court is unable to hold as a matter of law that the "no reliance" and "no other misrepresentations" clauses negate as a matter of law Small Ventures's fraud claims.

Further, even though some alleged misrepresentations may rightly be considered "opinions," "puffing," or "forward-looking statements," Small Ventures also alleges that Defendants sent to it, on multiple occasions, spreadsheets representing <u>Tekken</u> being carried at full value when, allegedly, <u>Tekken</u> should have been discounted or otherwise written down.  Considering this allegation in the light most favorable to Small Ventures, Small Ventures alleges that Defendants falsely made material representations of the present value of the most significant investment in their portfolio and concealed material facts regarding the same, which, if true, would be actionable misrepresentations.

In sum, Small Ventures alleges that each Defendant made several material representations that they knew were false when made, and/or intentionally concealed and failed to disclose material facts, that Defendants failed to correct the false statements and omissions when given opportunities to do so, that Small Ventures relied on the misrepresentations and material omissions, and that it suffered economic injury as a result. Defendants are not entitled to dismissal of the fraud claim at this pleading stage.

2.   Texas Securities Act

Accepting the facts pled as true for the purposes of this motion, Small Ventures has also stated a claim under the Texas Securities Act. *See* Tex. Rev. Civ. Stat. Ann. § 581-33(A)(2) (West 2010). Moreover, as discussed previously, the "no reliance" clause does not operate automatically to negate all of Small Ventures's fraud claims. Defendants' motion to dismiss Small Ventures's Texas Securities Act claim will be denied.

3.   Breach of Fiduciary Duty

To state a valid claim for breach of fiduciary duty, a plaintiff must state facts to show: "(1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the

defendant's breach resulted in injury to the plaintiff or benefit to the defendant." Anderton v. Cawley, --- S.W.3d ----, 2012 WL 1606665, at *9 (Tex. App.--Dallas May 8, 2012, no pet. h.) (citing Jones v. Blume, 196 S.W.3d 440, 447 (Tex. App.--Dallas 2006, pet. denied)).

Defendants correctly state that none of them owes a fiduciary duty to Small Ventures. Small Ventures argues that the individual Defendants owe it fiduciary duties because the relationships between the individual Defendants and Small Ventures involved a "high degree of trust, influence, and confidence."[34]

"[A] fiduciary or confidential relationship may arise from circumstances of the particular case, but it must exist prior to, and apart from, the agreement made the basis of the suit." Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 280 (Tex. 1995); accord Forsythe v. ESC Fund Mgmt. Co. (U.S.), Inc., 2007 WL 2982247, at *10 (Del. Ch. Oct. 9, 2007) ("[A] straightforward, arm's-length commercial relationship arising from contract does not give rise to fiduciary duties." (citing Wal-Mart Stores, Inc. v. AIG Life Ins. Co., 901 A.2d 106, 114 (Del. 2006) ("[I]t is vitally important that the exacting standards of fiduciary duties not be extended to quotidian commercial relationships."))). Because Small Ventures does not plead facts to show that the parties had any relationship of trust and confidence between them before the

---

[34] Document No. 40 ¶ 151.

21

transaction made the basis of this lawsuit, its breach of fiduciary duty claim will be dismissed.

IV.   <u>Order</u>

Based on the foregoing, it is

ORDERED that Defendants Rizvi Traverse Management, LLC's, MLRT Holdings, LLC's, Suhail Rizvi's, John Giampetroni's, Diane Stidham's, and Danny Mandel's ("Defendants") Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 41) pursuant to Rule 12(b)(2) is DENIED, and Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is GRANTED in part as to Small Ventures's breach of fiduciary duty claim, which is DISMISSED, and the Motion to Dismiss is otherwise DENIED.

The clerk shall notify all parties and provide them with a true copy of this Order.

Signed at Houston, Texas on this 2ᵈ day of October, 2012.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE