# EXHIBIT A

**PURCHASE AND SALE AGREEMENT**

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made as of October 31, 2008, by and among RT Newbridge/MLRT LLC, a Delaware limited liability company ("Seller"), RT Newbridge III LLC, a Delaware limited liability company ("Buyer"), Small Ventures USA, L.P., a Texas limited partnership ("Small Ventures"), and Newbridge Film Capital, LLC, a Delaware limited liability company (the "Company").

**RECITALS**

WHEREAS, simultaneously with the execution of this Agreement, Small Ventures has entered into a subscription agreement with Buyer (the "Small Ventures Subscription Agreement"), whereby Small Ventures has agreed to make capital contributions to Buyer in an amount equal to $10 million, $7 million of which was contributed on the date hereof and $3 million of which (the "Subsequent Capital Contribution") will be contributed on or after January 1, 2009.

WHEREAS, Seller desires to sell to Buyer, and Buyer desires to buy from Seller on the date hereof, a membership interest (the "Initial Purchased Membership Interest") equaling a Percentage Interest (as defined in the amended and restated limited liability company agreement of the Company (the "LLC Agreement")) equal to 26.147%, upon the terms and conditions contained in this Agreement for the Initial Purchase Price set forth below.

WHEREAS, following the purchase and sale of the Initial Purchased Membership Interest, Seller will continue to hold a 4.984% Percentage Interest, with a capital account balance as of the date hereof equal to $1,334,269 (the "Retained Membership Interest" collectively with the Initial Purchased Membership Interest, the "Purchased Membership Interest").

THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **SETTLEMENT TERMS.**

    1.1 Sale and Purchase of the Purchased Membership Interest.

    (a) Upon the terms and subject to the conditions of this Agreement, Buyer hereby purchases from Seller, and Seller hereby sells to Buyer, all of Seller's right, title and interest (other than the Excluded Writedown Allocation) to the Initial Purchased Membership Interest. The purchase price for the Initial Purchased Membership Interest (the "Initial Purchase Price") is $7,000,000, payable in accordance with the terms and conditions of this Agreement.

    (b) Simultaneously with the execution and delivery of this Agreement, (1) Seller and Company shall cause Exhibit A to the LLC Agreement to be amended to reflect Buyer's ownership of the Initial Purchased Membership Interest, and (2) Buyer is

paying to Seller the Initial Purchase Price by wire transfer of immediately available funds to an account designated in writing by Seller.

(c) The closing of the purchase and sale of the Initial Purchased Membership Interest (the "Closing") is taking place at 10:00 a.m. Eastern Time on the date hereof (the "Closing Date") at a mutually agreeable location. The Closing will be deemed effective at 12:01 a.m. Eastern Time on the Closing Date.

(d) On a date on or after January 1, 2009, as determined by Seller and the Company in their sole discretion (the "Subsequent Purchase Date"), Buyer shall purchase, and Small Ventures acknowledges and agrees that Buyer shall purchase, from Seller all of Seller's right, title and interest in the Retained Membership Interest (other than the Excluded Writedown Allocation) for a purchase price equal to the capital account balance in respect of the Retained Membership Interest as of the Purchase Date (the "Subsequent Purchase Price"). The capital account balance in respect of the Retained Membership Interests as of the date hereof is $1,334,269, and shall increase after the date hereof only in accordance with the terms of the Newbridge LLC Agreement. Seller shall provide notice to Buyer and Small Ventures of the Subsequent Purchase Price on the Subsequent Purchase Date. Buyer and Small Ventures acknowledge and agree that the Subsequent Purchase Price shall be immediately paid from the Subsequent Capital Contribution. On the Subsequent Purchase Date, (1) Seller shall cause Exhibit A to the LLC Agreement to be amended to reflect Buyer's ownership of the Retained Membership Interest and (2) Buyer shall pay to Seller the Subsequent Purchase Price by wire transfer of immediately available funds to an account designated in writing by Seller. Any remaining portion of the Subsequent Capital Contributions shall be used by Buyer to make a direct capital contribution to the Company in accordance with the terms of the Small Ventures Subscription Agreement.

(e) Notwithstanding the purchase of the Initial Purchased Membership Interests and the Retained Membership Interest by Buyer as contemplated herein, Seller shall retain, in respect of the Purchased Membership Interest and Retained Membership Interest, the Excluded Writedown Allocation. For purposes of this Agreement, the "Excluded Writedown Allocation" means any and all right, title and interest in any amounts received by the Company in respect of any recoupment of the writedown in the aggregate amount of $1,000,000 in respect of those certain loans to (a) Eliot Rocket Productions, LLC, in respect of the film titled "The Year of Getting to Know Us" and (b) Mrs. Rogers Film Limited, in respect of the film titled "Flashbacks of a Fool"). Buyer agrees to (and acknowledges that the Company and Seller may) take any and all actions necessary or desirable to effectuate the foregoing.

2. **REPRESENTATIONS AND WARRANTIES.**

    2.1    Representation and Warranties of Seller.

As of the date of this Agreement, Seller hereby represents and warrants to Buyer the following:

(a) <u>Organization; Authority Relative to This Agreement</u>. Seller is a limited liability company duly incorporated, validly existing and in good standing under the laws of the State of Delaware. Seller has all requisite limited liability company power and authority to execute, deliver, and perform its obligations under this Agreement and to consummate transactions contemplated hereby. The execution, delivery, and performance of this Agreement by Seller have been duly authorized by all necessary action of the manager of Seller. No other action on the part of Seller or any other individual, person or entity is necessary to authorize this Agreement or the consummation of the transactions contemplated by this Agreement. This Agreement has been duly and validly executed and delivered by Seller, and constitutes a valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, except as they may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or affecting creditors' rights generally, and except as they may be limited by general principles of equity, regardless of whether such enforceability is considered in a proceeding at law or in equity.

(b) <u>Consents and Approvals; No Violation</u>. Neither the execution nor the delivery by Seller of this Agreement nor the consummation by Seller of the transactions contemplated by this Agreement nor compliance with the terms and provisions of this Agreement (a) requires any authorization, consent or approval of any governmental or regulatory authority or of any other person or entity, (b) will accelerate any obligation under, violate or breach any provision of, constitute a default under, result in the creation of any lien or security interest under, result in the termination of, require the consent, authorization or approval of any third party under, or in connection with, any of the terms, covenants, provisions or conditions of any note, bond, mortgage, indenture, deed of trust, license, franchise, lease, contract, agreement or other instrument, commitment or obligation to which Seller is a party, or (c) will violate any order, writ, injunction, decree, judgment or arbitration award, or any statute, rule, regulation or ruling of any court or governmental authority, United States or foreign, applicable to Seller.

(c) <u>Equity</u>. Seller is the sole record and beneficial owner and holder of the Purchased Membership Interest. Seller will transfer to Buyer good title to the Purchased Membership Interest held by it, free and clear of any lien, security interest, claim or encumbrance.

2.2 <u>Representations and Warranties of Buyer.</u>

As of the date of this Agreement, Buyer hereby represents and warrants to Seller and the Company the following:

(a) <u>Organization; Authority Relative to This Agreement</u>. Buyer is a limited liability company duly formed, validly existing, and in good standing under the laws of the State of Delaware. Buyer has all requisite limited liability company power and authority to execute, deliver, and perform its obligations under this Agreement and to consummate the transactions contemplated hereby. The execution, delivery, and performance of this Agreement by Buyer have been duly authorized by the manager of Buyer. No other action on the part of Buyer or any other individual, person or entity is

3

necessary to authorize this Agreement or the consummation of the transactions contemplated by this Agreement. This Agreement has been duly and validly executed and delivered by Buyer, and constitutes a valid and binding obligation of Buyer enforceable against Buyer in accordance with its terms, except as they may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or affecting creditors' rights generally, and except as they may be limited by general principles of equity, regardless of whether such enforceability is considered in a proceeding at law or in equity.

(b) Consents and Approvals; No Violation. Neither the execution nor the delivery by Buyer of this Agreement nor the consummation by Buyer of the transactions contemplated by this Agreement nor compliance with the terms and provisions of this Agreement, (a) requires any authorization, consent or approval of any governmental or regulatory authority or of any other person or entity, (b) will accelerate any obligation under, violate or breach any provision of, constitute a default under, result in the creation of any lien or security interest under, result in the termination of, require the consent, authorization or approval of any third party under, or in connection with, any of the terms, covenants, provisions or conditions of any note, bond, mortgage, indenture, deed of trust, license, franchise, lease, contract, agreement or other instrument, commitment or obligation to which Buyer is a party, or (c) will violate any order, writ, injunction, decree, judgment or arbitration award, or any statute, rule, regulation or ruling of any court or governmental authority, United States or foreign, applicable to Buyer.

2.3   Representations and Warranties relating to the Company.

As of the date of this Agreement, Seller hereby represents and warrants to Buyer the following:

(a) Organization of Company. The Company (a) is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware, (b) is duly qualified to do business as a foreign limited liability company and is in good standing under the laws of each jurisdiction in which the failure to so qualify would reasonably be expected to have a material adverse effect on the Company, (c) has the relevant limited liability company power and authority necessary to own or lease its properties and to carry on its businesses as currently conducted and (d) is not in breach or violation of, or default under, any provision of its organizational documents. The Company has never approved or taken any action, nor is there any pending or threatened (to Seller's knowledge) threatened action, suit, arbitration, mediation, investigation or similar proceeding (an "*Action*"), seeking or otherwise contemplating the Company's dissolution, liquidation, insolvency or rehabilitation.

(b) Power and Authority; Enforceability. The Company has the relevant limited liability company power and authority necessary to execute and deliver this Agreement. The Company has taken all action necessary to authorize the execution and delivery of this Agreement. This Agreement has been duly authorized, executed and delivered by the Company and is enforceable against the Company in accordance with its terms, except as such enforcement may be limited by the application of bankruptcy,

4

moratorium and other laws affecting creditors' rights generally and as such enforcement may be limited by the availability of specific performance and the application of general equitable principles.

(c) Consents and Approvals; No Violation. Neither the execution nor the delivery by the Company of this Agreement nor the consummation by the Company of the transactions contemplated by this Agreement nor compliance with the terms and provisions of this Agreement, (a) requires any authorization, consent or approval of any governmental or regulatory authority or of any other person or entity, (b) will accelerate any obligation under, violate or breach any provision of, constitute a default under, result in the creation of any lien or security interest under, result in the termination of, require the consent, authorization or approval of any third party under, or in connection with, any of the terms, covenants, provisions or conditions of any note, bond, mortgage, indenture, deed of trust, license, franchise, lease, contract, agreement or other instrument, commitment or obligation to which the Company is a party, or (c) will violate any order, writ, injunction, decree, judgment or arbitration award, or any statute, rule, regulation or ruling of any court or governmental authority, United States or foreign, applicable to the Company.

(d) Capitalization. As of the date hereof without giving effect to the terms of this Agreement, the Company's ownership consists of the following: (1) a 50% Percentage Interest is owned by RT Newbridge, LLC, a Delaware limited liability company, (2) a 18.869% Percentage Interest is owned by RT Newbridge II, LLC, a Delaware limited liability company, and (3) a 31.131% Percentage Interest is owned by Seller.

(e) Records. The copies of the Company's organizational documents that were provided to Buyer and Small Ventures are accurate and complete in all material respects and reflect all amendments made through the date hereof. The Company's records made available to Buyer for review were correct and complete in all material respects as of the date of such review, no further entries have been made through the date of this Agreement, such records contain the true signatures of the persons purporting to have signed them.

(f) Financial Statements. The copies of the Company's financial statements (the "Financial Statements") provided to Buyer and Small Ventures were prepared in accordance with United States generally accepted accounting principles ("GAAP") applied on a consistent basis throughout the periods covered thereby, present fairly in all material respects the Company's financial condition as of such dates and the Company's results of operations and cash flow for such periods and are correct, complete and consistent in all material respects with the Company's books and records.

(g) Subsequent Events. The Company has operated in the ordinary course of business consistent with past custom and practice ("Ordinary Course of Business"), and, from the Balance Sheet Date to the Closing Date, there have been no events, series of events, or the lack of occurrence thereof that, singularly or in the aggregate, would

reasonably be expected to have a material adverse effect, either individually or in the aggregate, on the Company.

(h) <u>Legal Compliance.</u> The Company has complied in all material respects with all laws and Orders, and no Action is pending or, to Seller's knowledge, threatened against any of them alleging any failure to so comply. No material expenditures are, or based on any law, Order or permit will be, required of the Company or Buyer for the Company and its business and operations to remain in compliance with all laws, Orders and permits immediately following the Closing.

(i) <u>Real Property.</u> The Company does not own any real property.

(j) <u>Contracts.</u> The Company has delivered to Buyer and Small Ventures a correct and complete copy of the documents evidencing certain of the loan agreements to which the Company is a party (the "<u>Contracts</u>"). To the Company's knowledge, each such Contract is legal, valid and enforceable and will continue to be legal, valid and enforceable on identical terms following the consummation of the transactions contemplated by this Agreement. Except as set forth on Schedule 2.3(k), neither the Company nor, to the Seller's knowledge, any of the counter-parties to any such Contract is or has been in (and no event has occurred that, with or without notice or lapse of time, would create or constitute a breach or violation of, or default under, any of such Contract's provisions, and, to the Seller's knowledge, no event has occurred or likely to occur that, with or without notice or lapse of time, would give the Company or any other party to any Contract the right to either (i) declare a default or exercise any remedy under such Contract, (ii) accelerate the performance of, or payment under, such Contract or (iii) cancel, terminate or modify any such Contract, except as would not reasonably be expected to have a material adverse effect on the Company. No party to any Contract has repudiated in writing any provision of the Contract.

(k) <u>Litigation.</u> The Company (a) is not subject to any outstanding Order or (b) is not a party to, the subject of or, to any Seller Party's knowledge, threatened to be made a party to or the subject of, any Action.

(l) <u>Labor; Employees.</u> The Company does not have any employees.

(m) <u>Permits.</u> The Company possesses all material permits required to be obtained for its businesses and operations.

2.4 <u>Representations and Warranties of Small Ventures.</u>

As of the date of this Agreement, Small Ventures hereby represents and warrants to Seller and the Company the following:

(a) <u>Organization; Authority Relative to This Agreement.</u> Small Ventures is a limited partnership duly formed, validly existing, and in good standing under the laws of the State of Texas. Small Ventures has all requisite limited partnership power and authority to execute, deliver, and perform its obligations under this Agreement and the Small Ventures Subscription Agreement and to consummate the transactions

6

contemplated hereby and thereby. The execution, delivery, and performance of this Agreement by Small Ventures have been duly authorized by the general partner of Small Ventures. No other action on the part of Small Ventures or any other individual, person or entity is necessary to authorize this Agreement or the consummation of the transactions contemplated by this Agreement. This Agreement and the Small Ventures Subscription Agreement have been duly and validly executed and delivered by Small Ventures, and each such agreement constitutes a valid and binding obligation of Small Ventures enforceable against Small Ventures in accordance with its terms, except as they may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or affecting creditors' rights generally, and except as they may be limited by general principles of equity, regardless of whether such enforceability is considered in a proceeding at law or in equity.

(b) <u>Consents and Approvals; No Violation</u>. Neither the execution nor the delivery by Small Ventures of this Agreement or the Small Ventures Subscription Agreement nor the consummation by Small Ventures of the transactions contemplated hereby or thereby nor compliance with the terms and provisions hereof or thereof, (a) requires any authorization, consent or approval of any governmental or regulatory authority or of any other person or entity, (b) will accelerate any obligation under, violate or breach any provision of, constitute a default under, result in the creation of any lien or security interest under, result in the termination of, require the consent, authorization or approval of any third party under, or in connection with, any of the terms, covenants, provisions or conditions of any note, bond, mortgage, indenture, deed of trust, license, franchise, lease, contract, agreement or other instrument, commitment or obligation to which Small Ventures is a party, or (c) will violate any order, writ, injunction, decree, judgment or arbitration award, or any statute, rule, regulation or ruling of any court or governmental authority, United States or foreign, applicable to Small Ventures.

(c) <u>Diligence</u>. Small Ventures has completed its due diligence investigation of the Company. Small Ventures been furnished any materials relating to the Company, its operations and any other matter relating to this private placement which it has requested. Small Ventures has received answers to all inquiries put to Seller, and Small Ventures has been afforded the opportunity to ask questions and obtain any additional information necessary to verify the accuracy of any information provided regarding the Company.

3. **WARRANTIES.**

   3.1 <u>Survival.</u>

All representations, warranties and covenants by Buyer, Small Ventures and Seller contained in this Agreement shall survive the Closing and shall be binding upon, and fully enforceable against, Buyer, Small Ventures and Seller, and each of their respective successors and assigns.

4. **MISCELLANEOUS.**

   4.1 <u>Notices.</u>

Any notice or other communication required or which may be given under this Agreement shall be in writing sent by overnight courier to the addressee to the address provided to the addresses below and shall be deemed given one day after such mailing.

To Buyer:

>RT Newbridge III, LLC
>c/o Rizvi Traverse Management LLC
>260 East Brown Street, Suite 380
>Birmingham, Michigan 48009
>Attention: John A. Giampetroni
>Facsimile: (248) 594-4754

and

>Small Ventures USA, LP
>3050 Post Oak Blvd., Suite 460
>Houston, Texas 77056
>Attention: Kayla D. Bruzzese
>Facsimile: (713) 583-9206

To Seller:

>RT Newbridge/MLRT LLC
>c/o Rizvi Traverse Management LLC
>260 East Brown Street, Suite 380
>Birmingham, Michigan 48009
>Attention: John A. Giampetroni
>Facsimile: (248) 594-4754

with a copy to (which shall not constitute notice to Seller):

>Honigman Miller Schwartz and Cohn LLP
>2290 First National Building
>660 Woodward Avenue
>Detroit, Michigan 48226
>Attention: Michael D. DuBay, Esq.
>Facsimile: (313) 465-7393

Any of the addresses set forth above may be changed for purposes of providing notice under this Agreement by giving notice to the other parties.

4.2 Entire Agreement.

This Agreement embodies the entire agreement and understanding of the parties to this Agreement with respect to the subject matter of this Agreement. There are no restrictions, promises, representations, warranties, covenants or undertakings, other than those expressly set

forth or referred to in this Agreement. This Agreement supersedes all prior agreements, commitments and understandings, written or oral, between the parties with respect to such subject matter, and any such prior agreements or understandings are merged into this Agreement.

4.3    Governing Law.

This Agreement (except where specifically provided otherwise) shall be governed by the laws of the State of Delaware (regardless of the laws that might otherwise govern under applicable principles of conflicts of law) as to all matters, including, but not limited to, matters of validity, construction, effect, performance and remedies.

4.4    Attorneys' Fees.

If either party commences an action against any other party to enforce any of the terms, covenants, conditions or provisions of this Agreement or because of a default by a party under this Agreement, the prevailing party in any such action shall be entitled to recover reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution or defense of such action from the losing party.

4.5    Counterparts.

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

4.6    Interpretation.

The headings contained in this Agreement are solely for the purpose of reference, are not part of the agreement of the parties and shall not in any way affect the meaning or interpretation of this Agreement. All references to "Sections" in this Agreement are, unless specifically indicated otherwise, references to sections of this Agreement. Whenever the singular is used, the same shall include the plural and vice versa, where appropriate. Words of any gender shall include each other gender where appropriate.

4.7    Severability.

If any provision of this Agreement is determined to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall have no effect on the other provisions of this Agreement, which shall remain valid, operative and enforceable. Upon any such determination that any term or other provision is illegal, invalid or unenforceable, the parties hereto will negotiate in good faith to modify this Agreement so as to affect the original intent of the parties as closely as possible.

4.8    Waiver and Amendments.

This Agreement may be amended, modified, superseded, cancelled, renewed or extended, and the terms and conditions of this Agreement may be waived, only by a written instrument signed by the parties or, in the case of a waiver, by the party waiving compliance. No failure to exercise or delay in exercising any right, power or remedy hereunder shall operate as a waiver

thereof; nor shall any single or partial exercise of any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right, power or remedy. The rights and remedies under this Agreement are cumulative and are not exclusive of any rights or remedies which any party may otherwise have at law or in equity.

4.9   Binding Effect; Successors and Assigns.

This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective permitted successors and assigns.

4.10   Further Assurances.

The parties shall cooperate with each other and execute and deliver, or cause to be executed and delivered, such other and/or additional documents or replacement document, and will take such other action, as may be necessary or reasonably requested from time to time by the other party or parties hereto to effectuate the provisions and purposes of this Agreement.

4.11   Construction.

Each party hereto has participated in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises under any provision of this Agreement, this Agreement shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of authoring any of the provisions of this Agreement.

[signatures appear on following page]

The undersigned have executed this Purchase and Sale Agreement as of the date first set forth above.

**Buyer**

RT Newbridge III, LLC

By: _/s/ William O. Perkins III_
Name: William O. Perkins III
Its: President

**Seller**

RT Newbridge/MLRT LLC

By: Rizvi Traverse Management LLC
Its: Manager

By: _____
Name: _____
Its: _____

**Small Ventures**

Small Ventures USA, LP

By: Small Ventures USA GP LLC
Its: General Partner

By: _/s/ William O. Perkins III_
Its: President

**Company**

Newbridge Film Capital, LLC

By: Newbridge Film Capital, LLC
Its: Manager

By: Rizvi Traverse Management LLC
Its: Manager

By: _____
Name: _____
Its: _____

DETROIT.3358412.6

11

The undersigned have executed this Purchase and Sale Agreement as of the date first set forth above.

**Buyer**

RT Newbridge III, LLC

By: _____
Name: _____
Its: _____

**Seller**

RT Newbridge/MLRT LLC

By: Rizvi Traverse Management LLC
Its: Manager

By: *[signature]*
Name: John A. Giampetroni
Its: Managing Director

**Small Ventures**

Small Ventures USA, LP

By: Small Ventures USA GP LLC
Its: General Partner

By: _____
Its: _____

**Company**

Newbridge Film Capital, LLC

By: Newbridge Film Capital, LLC
Its: Manager

By: Rizvi Traverse Management LLC
Its: Manager

By: *[signature]*
Name: John A. Giampetroni
Its: Managing Director

DETROIT.3358412.6

11