IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SMALL VENTURES USA, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-3072 |
| | § | |
| RIZVI TRAVERSE MANAGEMENT, LLC, | § | |
| MLRT FILM HOLDINGS, LLC, | § | |
| SUHAIL RIZVI, JOHN | § | |
| GIAMPETRONI, DIANE STIDHAM, | § | |
| DANNY MANDEL, and BEN KOHN, | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM AND ORDER</u>

Pending are Defendants Rizvi Traverse Management, LLC, MLRT Film Holdings, LLC, Suhail Rizvi, John Giampetroni, Diane Stidham, and Danny Mandel's Motion to Dismiss Counts I, II, and III of Plaintiff's Second Amended Complaint (Document No. 99). After reviewing the motion, response, reply, surreply, and the applicable law, the Court concludes as follows.

## I.  Background

Plaintiff Small Ventures USA, L.P. ("Plaintiff"), a venture capital and private equity investment firm based in Houston, Texas, invested $10 million in Newbridge Film Capital, LLC ("Newbridge"), a company which provides gap financing to producers of independent

films.[1]   Plaintiff brings this action against Defendants Rizvi Traverse Management, LLC ("Rizvi Traverse"), MLRT Film Holdings, LLC ("MLRT"), Suhail Rizvi, John Giampetroni, Diane Stidham, and Danny Mandel (collectively, "Defendants") to recover damages for alleged violations of federal and state securities laws, fraud, and other tortious conduct surrounding the solicitation, sale, and management of this investment.[2]

A.   Additional Factual Allegations Bearing on Counts I, II, and III

On September 6, 2008, Rizvi called Plaintiff's founder William O. Perkins III ("Perkins") and offered him an opportunity to invest in Newbridge.[3]   During this call, Rizvi allegedly made several misrepresentations to Perkins "for the purposes of inducing Perkins

---

[1] *See* Document No. 94 ¶¶ 1, 8, 16 (2d Am. Complt.).  Plaintiff made this investment through RT Newbridge, III, LLC, ("RT NB III"), which in turn held a membership interest in Newbridge that consisted of the Newbridge securities that are the subject of this suit.  Id. ¶ 8.

[2] *See* Document No. 94.  Diane Stidham ("Stidham") and Danny Mandel ("Mandel") are officers and Managing Directors of Newbridge and are allegedly employed by Rizvi Traverse and MLRT.  Id. ¶¶ 13-14.  Newbridge is managed by MLRT which, in turn, is 100% held and controlled by Rizvi Traverse.  Id. ¶¶ 10, 16.  Suhail Rizvi is the co-founder and Chief Investment Officer of Rizvi Traverse, and John Giampetroni is co-founder and Chief Operating Officer of Rizvi Traverse and Managing Director of MLRT.  See id. ¶¶ 11-12.  A more comprehensive recitation of the background facts can be found in the Court's October 2, 2012 Memorandum and Order at Document No. 58.

[3] Document No. 94 ¶ 24.

2

and [Plaintiff] to agree to ultimately invest in Newbridge,"
including representations that Plaintiff "could acquire an interest
in Newbridge because the selling entity, Merrill Lynch Holdings,
[("Merrill Lynch")] was liquidating its interest, and that
[Plaintiff] could purchase the [Merrill Lynch] interest at the same
price [Merrill Lynch] would receive on the sale with no 'markup'
and with no compensation to Defendants."[4]   At this time, Rizvi
allegedly also failed to disclose that <u>Tekken</u>, a film accounting
for more than one-third of Newbridge's portfolio, received negative
reviews at the Cannes Film Festival and was regarded as "really
bad" by its own producer, and that no significant pre-sales of the
film had occurred in the previous six months.[5]

The next month, Rizvi Traverse, Rizvi, and Giampetroni ("the
10(b) Defendants") provided Plaintiff with an investor presentation
stating that the investment was "co-arranged" by Merrill Lynch and
Rizvi Traverse, listing Merrill Lynch as a "Sponsor" of the
investment with a co-equal role and capital commitment to Rizvi
Traverse, and utilizing the Merrill Lynch bull logo.[6]   Plaintiff
alleges that despite these representations, Merrill Lynch had no

---

[4] <u>Id.</u> ¶ 25-26.

[5] <u>Id.</u> ¶ 26.

[6] <u>Id.</u> ¶ 29.

3

ownership interest in Newbridge when Plaintiff entered into the transaction.[7]

Plaintiff alleges that during this due diligence period, the 10(b) Defendants repeatedly and falsely assured Plaintiff that it was purchasing the Newbridge interest at the same price for which Merrill Lynch was selling it, and that the 10(b) Defendants would make no profit on the deal, while actually they marked up the price to derive for themselves a $4 million profit.[8]

Plaintiff further alleges that the transaction was structured to conceal the 10(b) Defendants' misrepresentations.  Plaintiff alleges that the 10(b) Defendants created an intermediary shell entity, RT/MLRT, to acquire Merrill Lynch's Newbridge interest for $9.5 million,[9] and chose the name RT/MLRT falsely to suggest that this entity was jointly owned by Rizvi Traverse and Merrill Lynch.[10]

---

[7] Id. ¶ 29.

[8] *See* id. ¶ 34 ("Rizvi falsely assured Perkins that [Plaintiff] would be paying the same consideration that [Merrill Lynch] would receive as a result of the transaction, and that the 10(b) Defendants would not receive any compensation as a result of the transaction."); id. ¶ 37 (Giampetroni told Plaintiff's Chief Financial Officer Kayla Bruzzese "that [Plaintiff] would be acquiring the former [Merrill Lynch] interest at 'net book value.'"); id. ¶ 38 (Rizvi "falsely assured Perkins that neither Rizvi, Rizvi Traverse nor its principals would receive" any compensation from Plaintiff's purchase of the former Merrill Lynch interest). *See also* id. ¶ 33 (10(b) Defendants "captured more than $4 million in undisclosed and therefore improper profits.").

[9] Id. ¶¶ 42, 45.

[10] Id. ¶ 43.

The 10(b) Defendants then formed RT NB III to purchase the securities from RT/MLRT, and induced Plaintiff to buy the beneficial ownership of RT NB III, in order "to conceal the fact that a separate entity that the 10(b) Defendants owned and controlled, and not [Merrill Lynch], would be the counterparty."[11] In transferring what was misrepresented as Merrill Lynch's interest in Newbridge to Plaintiff, the 10(b) Defendants allegedly "unilaterally and secretly marked up that interest by approximately 40%," allowing them to capture an improper profit of more than $4 million.[12]

Plaintiff also alleges that Defendants failed to disclose any negative information about the Tekken loan, and continued to mark it at full face value without a discount, even though the producer had defaulted on the loan on July 31, 2008.[13]   Defendants also failed to disclose that if they could not recover or collect on the Tekken loan, Newbridge would likely default on its credit facility and be foreclosed upon.[14]   Plaintiff alleges that when Defendants failed to collect on the Tekken loan or the guaranty bond, Newbridge failed and Plaintiff lost its investment.[15]

---

[11] Id. ¶ 43.

[12] Id. ¶¶ 51, 53.

[13] Id. ¶¶ 78-80.

[14] Id. ¶ 80.

[15] Id. ¶ 81.

B.   <u>Procedural History</u>

Plaintiff in its Original Complaint alleged that Defendants made misrepresentations about the <u>Tekken</u> loan and the risks of Plaintiff's investment, and grossly mismanaged the investment by failing to collect on the <u>Tekken</u> completion guaranty bond and mishandling at least one other loan.[16]   Plaintiff asserted claims for violations of the Texas Securities Act and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as several common law claims.[17]   Plaintiff later filed a First Amended Complaint based on similar factual allegations, and asserting the same claims.[18]   Plaintiff subsequently dismissed its RICO claims,[19] and the Court dismissed its breach of fiduciary duty claim.[20]

In July 2013, Plaintiff requested leave to file a Second Amended Complaint "to assert allegations based upon information just learned during the course of discovery in this matter."[21] Plaintiff asserted that this new information concerned the $4 million profit earned by Rizvi Traverse.[22]

---

[16] Document No. 1 (Complt.).

[17] <u>Id.</u>

[18] *See* Document No. 40.

[19] *See* Document No. 42 at vii.

[20] Document No. 58.

[21] Document No. 84 at 1.

[22] <u>Id.</u> at 4-5.

The Court granted leave for Plaintiff to file its Second Amended Complaint, in which Plaintiff alleged the new information it had discovered, added allegations regarding the 10(b) Defendants' misrepresentations regarding Merrill Lynch's role, and 10(b) Defendants' secret markup scheme by use of a deceptively named shell corporation to capture a $4 million profit at Plaintiff's expense.[23] Plaintiff's Second Amended Complaint asserts claims for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act") and Article 581-33 of the Texas Securities Act, and for common law fraud, fraud by nondisclosure, and negligent and grossly negligent misrepresentation.[24] Defendants move to dismiss Plaintiff's Securities Exchange Act claims.[25]

## II.  Legal Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.  See Scheuer v.

---

[23] See Document No. 94.

[24] Plaintiff's Second Amended Complaint also alleges negligence and gross negligence, but the Court dismissed those claims in its September 4, 2013 Order.  See Document No. 93.

[25] Document No. 99.

<u>Rhodes</u>, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727 (1982).  The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint.  *See* <u>Lowrey v. Tex. A&M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

III.   <u>Discussion</u>

Section 10(b) of the Exchange Act makes it unlawful for any person, directly or indirectly, "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated to enforce Section 10(b), makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

17 C.F.R. § 240.10b-5. To state a claim based on a misrepresentation or omission under Rule 10b-5(b), Plaintiff must allege: (1) defendants made a material misrepresentation or omission; (2) defendants acted with scienter; (3) a connection to the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation, *i.e.*, a causal connection between the misrepresentation or omission and plaintiff's loss. <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta</u>, 128 S. Ct. 761, 768

(2008); In re Enron Corp. Secs., 529 F. Supp. 2d 644, 678 (S.D. Tex. 2006) (Harmon, J.).   To state a claim based on deceptive conduct under Rule 10b-5(a) and (c), Plaintiff must allege: (1) defendants committed a deceptive or manipulative act; (2) defendants acted with scienter; (3) the act affected the market for securities or was otherwise in connection with their purchase or sale; and (4) defendants' actions caused plaintiff's injuries. In re Enron, 529 F. Supp. 2d at 678 n.45.

A.   Loss Causation

Defendants allege that Plaintiff's Exchange Act claims fail because Plaintiff has not adequately pled loss causation.[26] Defendants contend that Plaintiff's Exchange Act claims are based on allegedly fraudulent conduct concerning the $4 million markup and Merrill Lynch's role in the transaction ("the markup and seller's identity deceptions"), and that this conduct is wholly unrelated to Defendants' alleged mishandling of the Tekken loan and a loan for the film Norm of the North, the actions that Plaintiff alleges caused Newbridge to fail.[27]   Plaintiff counters that the Court should look at its allegations as a whole, and consider the

---

[26] Document No. 99 at 20-24.

[27] See id. at 21-23.

Tekken loan misrepresentations and omissions ("the Tekken deceptions") as part of the Exchange Act claims.[28]

      1.   The Tekken misrepresentations and omissions are not part of Plaintiff's Exchange Act claims

The Second Amended Complaint states it alleges "two separate but complementary schemes" designed to defraud Plaintiff, the first of which Plaintiff "only recently learned about through discovery."[29]   In the first scheme, the 10(b) Defendants made misrepresentations about who owned the Newbridge securities sold to Plaintiff, why the transaction was structured the way it was, that there would be no markup on the price of the securities, and that the 10(b) Defendants would receive no financial gain from the investment.[30]   In the second scheme, all Defendants made misrepresentations and omissions concerning Tekken.[31]   After brief mention of Tekken early in the "Facts" section,[32] the Second Amended Complaint does not allege facts pertaining to the Tekken scheme in the next 36 paragraphs.[33]   It is in these paragraphs that Plaintiff

---

[28] Document No. 100 at 23-24.

[29] Document No. 94 ¶ 1.

[30] Id. ¶¶ 2-3.

[31] Id. ¶ 4.

[32] See id. ¶ 26.

[33] See id. ¶¶ 27-62.

details the misrepresentations and omissions committed by the "10(b) Defendants," and pleads the other elements of its Exchange Act claims.[34]   Notably, the section entitled "Loss Causation/ Damages" alleges that Plaintiff's losses were "immediate" when Plaintiff purchased the Newbridge membership interests, and were caused by the markup and seller's identity deceptions, all without any mention whatever of the Tekken deceptions.[35]   Furthermore, the

---

[34] *See* id. ¶ 54 (titled "10(b) Defendants' Scienter"); id. ¶¶ 55-59 (titled "SMV's Reasonable Reliance on the 10(b) Defendants' Misrepresentations"); id. ¶¶ 60-62 (titled "Loss Causation/Damages").

[35] The "Loss Causation/Damages" section reads:

60.  [Plaintiff] was damaged as a result of the 10(b) Defendants' fraudulent schemes.  As described above, the 10(b) Defendants' fraud caused [Plaintiff] to overpay to acquire assets as a result of an undisclosed and therefore improper, greater than 40% 'markup' from a shell corporation that the 10(b) Defendants owned and controlled.  The 10(b) Defendants' misrepresentations, omissions and deceptive conduct concealed the risk-about which [Plaintiff] repeatedly inquired-regarding an undisclosed and therefore improper 'markup' and self-dealing by the 10(b) Defendants.  [Plaintiff's] purchase of Newbridge membership interests based on the 10(b) Defendants actions resulted in an immediate loss and damages.

61. In addition, [Plaintiff] has suffered lost opportunity damages because the funds that the 10(b) Defendants induced [Plaintiff], through RT NB III, to invest in Newbridge could have been invested for further gains elsewhere.

62. [Plaintiff] was further harmed, directly as a result of any management and advisory fees Rizvi Traverse received as manager to RT NB III, and indirectly as a result of fees Rizvi Traverse received as manager and adviser to MLRT, given Rizvi Traverse's breach of duties

sections of the Second Amended Complaint listing Plaintiff's Causes of Action for federal securities law violations do not plead any of the <u>Tekken</u> deceptions.[36]  A fair reading of Plaintiff's Exchange Act claims discloses no reliance on the <u>Tekken</u> deceptions as having bearing on the 10(b) Defendants' liability or on Plaintiff's claimed damages for violations of Section 10(b).

> 2.   <u>Plaintiff has not adequately pled loss causation based on the markup and seller's identity deceptions</u>

The loss causation element requires that Defendants' actions caused the loss for which Plaintiff seeks to recover.  *See* <u>Lormand v. US Unwired, Inc.</u>, 565 F.3d 228, 255 & n.18 (5th Cir. 2009) (citing 15 U.S.C. § 78u-4(b)(4)).  Plaintiff argues that the markup and seller's identity deceptions caused Plaintiff to overpay to acquire the Newbridge securities, and that Newbridge failed when Defendants neglected to collect on the <u>Tekken</u> loan.[37]

Plaintiff's allegations that the 10(b) Defendants' secret markup and seller's identity deceptions caused Plaintiff's "immediate" loss and damages because Plaintiff overpaid for the Newbridge securities is not sufficient to allege loss causation

---

owed to these entities and conflicts of interest. Document No. 94 ¶¶ 60-62.

[36] <u>Id.</u> ¶¶ 114-136.

[37] Document No. 100 at 24.

under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(4).  *See* <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 125 S. Ct. 1627 (2005) (holding that a plaintiff cannot satisfy the loss causation requirement simply by alleging that the price of the security on the date of purchase was inflated because of the misrepresentation).  Rather, a plaintiff has to allege a causal connection between the misrepresentations at issue and the decrease in the value of its investment.  Although this is not a typical fraud-on-the-market case where Plaintiff could easily re-sell the securities it purchased, the fundamental principle of <u>Dura</u> seems no less applicable.  The statute reads:

> (4)  **Loss causation**
>
> In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.

15 U.S.C. 78u-4(b)(4).  Plaintiff's claim for damages must be based on a plausible claim that the alleged misrepresentation or fraud caused the damages.  The Fifth Circuit put it this way:

> [We] conclude that Rule 8(a)(2) requires the plaintiff to allege, in respect to loss causation, a facially "plausible" causal relationship between the fraudulent statements or omissions and plaintiff's economic loss, including allegations of a material misrepresentation or omission, followed by the leaking out of relevant or related truth about the fraud that caused a significant part of the depreciation of the stock and plaintiff's economic loss.

14

<u>Lormand v. US Unwired, Inc.</u>, 565 F.3d 228, 258 (5th Cir. 2009). Plaintiff argues that it was the failure of the <u>Tekken</u> loan that caused the loss of its investment, not the concealed markup and seller's identity deceptions. Although the latter deceptions and misrepresentations may add additional substance to Plaintiff's common law fraud claims against Defendants, these facts as alleged by Plaintiff do not state a claim upon which relief can be granted under the Exchange Act because of the absence of loss causation. Accordingly, Plaintiff's Section 10(b) claims are dismissed.[38]

## B.    <u>Section 20(a) Claims</u>

Plaintiff also asserts a claim against Defendants Rizvi and Giampetroni for "control person liability" under Section 20(a) of the Securities Exchange Act.[39]  Section 20(a) holds liable "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter."   15 U.S.C. § 78t(a).   As Section 20(a) is a secondary liability provision, failure to plead a cognizable primary securities fraud violation under Section 10(b)

---

[38] Plaintiff also advances the materialization of the risk theory, under which a plaintiff pleads that his loss was caused by the materialization of the risk concealed by the fraudulent statement. *See* <u>Dawes v. Imperial Sugar Co.</u>, 975 F. Supp. 2d 666, 709 (S.D. Tex. 2013) (Rosenthal, J.).   The Fifth Circuit has not adopted this theory. <u>Id.</u>   Even if it did so, Plaintiff has not alleged that any risk materialized from the markup and seller's identity deceptions that caused its loss, but rather that the risk of the <u>Tekken</u> loan materialized and caused Newbridge to fail.

[39] Document No. 94 ¶¶ 132-136.

or Rule 10b-5 constitutes failure to establish control person liability. *See* <u>Fin. Acquisition Partners LP v. Blackwell</u>, 440 F.3d 278, 288 (5th Cir. 2006).

C.   <u>Leave to Amend</u>

Plaintiff requests leave to amend to incorporate the <u>Tekken</u> deceptions into its Exchange Act claims.[40] When Plaintiff sought leave to file its Second Amended Complaint, Defendants challenged Plaintiff's ability to plead "that the 10(b) Defendants' purported misrepresentations about the identity of the seller and the [markup] on the transaction proximately caused [Plaintiff's] loss."[41] Plaintiff knew that this was an issue *before* the amendment was allowed but did not seek to modify or change its proposed pleading at that time. Moreover, Plaintiff has known of the <u>Tekken</u> deceptions since before it filed its Original Complaint, but offers no reason for not having pled them as an Exchange Act claim in any of its three previously filed Complaints.[42] Enough time has passed.

---

[40] *See* Document No. 106-1 at 6 n.6.

[41] Document No. 89 at 21.

[42] Plaintiff filed its Original Complaint on August 23, 2011. Document No. 1. With leave of the Court, Plaintiff filed a First Amended Complaint on April 5, 2012, pleading its factual allegations with further particularity. *See* Document No. 38 (Order of the Court of March 22, 2012, granting Plaintiff leave to amend to allege fraud with the specificity required by Rule 9(b)); Document No. 40 (1st Am. Compl.) Plaintiff's Second Amended Complaint was deemed filed on September 4, 2013. Document No. 93.

Nearly three years after filing its Original Complaint, and with two amended complaints having already been allowed, Plaintiff has failed to show sufficient diligence to permit the filing of yet another complaint. The request is therefore denied. *See* Foman v. Davis, 83 S. Ct. 227, 230 (1962) (listing "undue delay" as a justification for denying leave to amend).

IV.   Order

Based on the foregoing, it is

ORDERED that Defendants Rizvi Traverse Management, LLC, MLRT Film Holdings, LLC, Suhail Rizvi, John Giampetroni, Diane Stidham, and Danny Mandel's Motion to Dismiss Counts I, II, and III of Plaintiff's Second Amended Complaint (Document No. 99) is GRANTED and Counts I, II, and III of the Second Amended Complaint are DISMISSED.

The clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas on this *16th* day of July, 2014.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE